We have one case here this morning with Judge Barry and Judge Barry is on the phone and will participate in this case via phone. Judge Barry, are you with us? Yes, I am. Good morning. Good morning. And we'll call the first case, Robert Maxwell Simon, Stacey Helene Simon v. FIA Card Services in Weinstein and Rowley P.S. Mr. Winchell. Good morning, Your Honors. And may it please the Court, Andy Winchell on behalf of Appellants Rob and Stacey Simon. I assume that Your Honors have read the documents and are very familiar with the case. The issue that we're dealing with, two main issues that we're dealing with. Oh, sorry, I'd like to reserve a few minutes for a rebuttal. That request will be granted. Thank you. Two main issues that are before the Court that come from the District Court's opinion. First is that the District Court held that... Mr. Winchell, keep your voice up, not only for us, but so that Judge Barry can hear you. I will do my best, Your Honor. First issue, the District Court held that the competent attorney standard applies to communications to a consumer's attorney with respect to the FDCPA. The Third Circuit had already rejected the competent attorney standard in this very case. Well, that's not exactly true. We rejected it as it was before us in that prior case. Well, Your Honor, as I understand it... We have rejected the competent attorney standard. We've not rejected it? No. All right. Well, then the issue, as I understand it, is whether we should adopt the competent attorney standard. That's another question, appropriately phrased. Thank you, Your Honor. I appreciate the help. And similarly, the second main issue is whether the District Court rule is immaterial, that a letter containing a settlement offer falsely certified that had been sent directly to the consumer in question rather than just to the consumer's lawyer. Now, there is some ambiguity here, and it's important to make clear about something. An attorney representing a Chapter 7 debtor in New Jersey and in most of the country will generally have a limited scope of representation. That happened to be true in this case as well. I only represented the Simons with respect to their... Please keep your voice up. With respect to their... Oh, I see. There we go. There you go. You're mumbling. I apologize. I only represented the Simons initially with respect to their Chapter 7 bankruptcy. I was not necessarily representing them with respect to any 2004 examinations, with respect to any non-dischargeability actions. And when Mr. Jeanette's letter from defendant Weinstein and Riley came to my office, it was unclear whether it had been transmitted to my clients. There was a certification indicating that it had. In fact, it had not. There's no question it had not. There's no ambiguity there. However, at the time, I would not have necessarily been representing the Simons with respect to that 2004. If you do this with that... Should I bring it closer? There you go. Is that better? That's better. Okay. I would not necessarily be representing the Simons with respect to the 2004 exam or with respect to the subsequent non-dischargeability action. The subpoena attached was invalid for a number of reasons. We took it to the bankruptcy court, and the bankruptcy court invalidated the agreement. It was unlawful on a number of bases, one of which it hadn't been sent to the witness in question. The subpoena attempted to bring them out of state for their deposition. It didn't have the language of Rule 45C and D, as it was written back then, which would have given the consumer better guidance as to what the limitations of the subpoena power were. With those limitations, we had the subpoena quashed at the same time we brought the FDCPA action in the bankruptcy court. The bankruptcy court dismissed the FDCPA action on jurisdictional grounds. During that argument, Mr. Ginnett explained that this was intentional. Everything about it, there was no mistake. There was no error. This is important because the FDCPA, although it's a strict liability statute, has a carve-out for bona fide error. But Mr. Ginnett explained to the bankruptcy court there was no error. There was no mistake here. And this had all been drafted, and he thought it was according to the rules. When the bankruptcy court dismissed the action, because it was a Chapter 7 case, we thought that the court had jurisdiction because at that time we still had the ability to convert it to Chapter 13, and therefore the court had jurisdiction. The court disagreed, and we therefore brought the case in its discipline. It's interesting. It seems like a little bit of a catch-22. Your friends across the aisle know that your client is represented, so they do what the ethical rules tell them to do and send it to the attorney. You don't want to make an ex parte communication. It also seems, though, if they did what, you know, you faulted them for it, but if they did what I guess you said they should do, you could get them another way, through another section of the FDCPA, right? No, Your Honor. If you look at the rules of professional conduct, this is RPC 4.2. Okay. It says that you should not communicate about the subject of a representation with a person that the lawyer knows or should know, reasonably know, is represented in that matter. And there's an exception. It says if it's authorized by law or court order to do so. Well, here, there's no question it was authorized to send the subpoena to my clients directly. In fact, it was required. And typically that's what happens. Well, it wasn't sent to your clients, was it? They were not sent to your clients. No, Your Honor. It was never sent to my client, and I didn't discover that until later. Why does it make any sense at all to apply a least sophisticated debtor standard in analyzing communications that never were sent to or reached the debtors? It's just a matter of common sense. I would answer that in two ways, Your Honor. First is that the Third Circuit has already ruled in Martin v. LaSalle that a communication to a consumer debtor's attorney is a communication to the debtor. And second, in this case, it can be difficult for a consumer debtor to recognize what their rights are, and particularly in the context where they might not be represented. Well, I assume that you would agree. If we conclude that these communications were not misleading or deceptive, even to the least sophisticated debtor, we can affirm, correct? No, Your Honor. There's a procedural issue remaining about whether you should affirm. And if you want me to cover that, I can. But we had, at the opening after the remand, got back to district court. We had said we could bring cross motions for summary judgment. We understood that there were a lot of facts that were not in dispute in this case. Unfortunately, there are still facts that were in dispute. And what should have happened is that the defendants here should have brought a motion for partial summary judgment, and I could make a motion for full summary judgment. The problem is that the district court granted full summary judgment for the defendants, even though we still have the issue of whether the defendants ever intended to do what they threatened to do, either to bring an action in bankruptcy court for non-dischargeability or to attempt to drag my clients to New York for the deposition. Well, it says the subpoenas don't quite say that, at least as I read it. They don't say what? The examination may take place, quote, at an alternate location to be agreed upon by the parties. It's not saying they have to go someplace. The letters suggest that Weinstein offered to hold an informal telephone conference in lieu of examination, and there's no allegation that Weinstein was not legally entitled to seek an examination. So I think we're kind of back into the false and misleading and material aspect of these subpoenas.  Your Honor, I don't know that the least sophisticated debtor looking at this document would realize that they were under no obligation to go to New York or to comply with this. They didn't see the document. You're saying that as an objective matter, these debtors never saw it. Yes, they did, Your Honor, because I sent it to them, because that's all I probably get to do. In terms of anything, there's no dispute here. You know, what's the unlawful or unintended action which is required under 1692E5? The unlawful action would have been to bring my clients, to force my clients to go to New York. As Judge Berry said, there was an alternative stated, and they were certainly entitled to issue a subpoena and serve your client through the subpoena. A lawful subpoena, yes. But you acknowledge it was a subpoena, because you went to quash the subpoena. The mere fact that you went to quash the subpoena meant that a subpoena existed. And the question is whether my clients, if I didn't quash it, would have otherwise had been required to go to New York. And I thought it better to quash the subpoena rather than leave it up to the Weinstein and Riley to have leverage later to say that my clients didn't comply with the subpoena, lawful or otherwise. Your Honor, just to be clear, there was some question in the oral argument last time we were here about whether this really was a subpoena or not, because it had so many defects. You're all treating it, you're using the word subpoena. Yes, we're calling it a subpoena for convention sake. You say Rule 45 applies, so I don't think that... But you acknowledge that under Rule 2004, they were entitled to serve your clients with a subpoena and take testimony. Absolutely. No question about that. The question is where they were offered. They were under no obligation to... although they offered, although there was a suggestion, there was no offer to say, we'll hold this in New Jersey, we'll put this near your apartment in Basking Ridge. But that was stated in the document. No, it's the mutually agreement. They were not saying that they would move it, they said that they might move it. At an alternate location to be agreed upon by the party. Right, if they didn't agree, then they wouldn't agree. Well, can I change gears just for a minute? I also ask your adversaries to address this as well. The Supreme Court has before it a case called Spokio. It was recently argued. It considers whether violations of a statute such as the FDCPA confers Article 3 standing. I don't know how familiar you are with that, but would that affect this case? Does it confer Article 3 standing? There are damages here. In other words, if the Supreme Court decides that statutory damages could not confer Article 3 standing, then how would that affect this case? In this case, there are damages because my client... But what are they? What are the actual damages? It would be the cost of paying me to quash the subpoena. That's right. That's it. Right. That's all. I mean, there are probably some additional damages like postage and mileage and that type of thing to deal with us back then. But there's no... In this case, there are actual damages, though they would not be large. Nothing about this case is large. Okay. Not that that matters for the purposes of the FDCPA. I see my time is up, so I'm going to sit down and yield the podium unless you have something further. That's fine. Ms. Johnston, I'm not sure why we have alternative counsel, both counsel listed. We scheduled argument here only on Weinstein and Rowley. Yeah, and it's not my impression, Judge Fischer, that the Simons are challenging the grant of summary judgment in FIA's favor. I mean, I thought they waived it on appeal. They did. Your Honor, I should let the FIA counsel address that issue. There was some concern on FIA's part that the Simons had not, in fact, waived it. Well, we did. They're somewhat puzzled as to why they're here also. You have the entire 15 minutes. We did not schedule argument on that. Well, thank you, Your Honor. Okay. So you can exhale. You can exhale. I'd like to correct one misstatement that Mr. Winchell made about the communications that came from Weinstein and Rowley to his office. The letter was addressed only to him. The letter was not addressed to his clients. There was a certification on the subpoena that indicated that it had been sent to his clients, but the cover letter, the letter, which was a cover letter, which attached the subpoenas, was only addressed to him. So there really can't have been any confusion at the time about whether or not the letter had gone to his clients. I agree that there are really two issues on this appeal. One is whether the district court correctly applied a materiality standard. I think the Jensen v. Pressler and Pressler case makes it clear that that was absolutely the right standard. Judge Shipp anticipated that decision quite correctly, and I don't really have anything else to say about that unless the court has questions. On the competent attorney standard, it is not the case that the Simon decision and the Martin v. LaSalle decision barred this court from adopting a competent attorney standard under the facts of this case. First of all, I think of it as the Allen decision for some reason. The Allen. I'm sorry, Judge Berry, did you? No, I was agreeing. It's the Allen case, but I'm not sure they adopted any standard. I agree with that, Your Honor. That decision held that a communication to an attorney could be governed by the FDCPA.  It didn't discuss a competent attorney standard. Well, except they said it in Allen. We said we treat communications to a debtor's attorney no differently from communications to a debtor because they're an indirect communication. Yes, Your Honor. There's certainly no question after that decision that a communication that's made only to a debtor has to be examined in the light of the FDCPA. But the statutory provision in that case was 1692F. The provision of 1692F that talks about whether the creditor is attempting to collect an amount that's not authorized under the governing agreement. And that, like the issue that the first Simon appeal addressed, is a yes-no, on-off switch kind of decision. Either the amount sought is authorized by the agreement or it's not. In the Simon decision, the question was whether under 1692E11, the Minnie Miranda ruling had to be included in the communication or not. Either it was there or it wasn't there. If it was required to be there and it wasn't there, then it violated the statute. The issue before the court today is really actually quite different. It's whether the communication was misleading or deceptive to the recipient of the communication. That's one of the issues. We did not adopt or endorse the competent attorney standard in Allen, despite a clear opportunity to do so and would like to see us do it now. So that's really kind of another issue. It's a big issue here, isn't it? Yes, Your Honor. I do think that is the issue here. I think the question is whether the court should adopt a competent attorney standard when the issue is the sophistication of the recipient, when the recipient of the communication's understanding of the communication is at issue. Does the adoption of that standard or the possible adoption of that standard comport with our statement in Allen that a communication to a consumer's attorney is undoubtedly an indirect communication to the consumer? I think it would be consistent with that statement, that ruling, that holding. I do, Your Honor. And how so? Because if it's undoubtedly an indirect communication to the consumer, then doesn't that bring in the least sophisticated consumer standard as opposed to the competent attorney standard? Not inevitably, Your Honor. I think that the Allen decision really didn't focus on the subjective, well, the hypothetical objective recipient of the communication. It focused on whether you violate the FDCPA when you write a letter to the attorney that includes inaccurate statements of what's owed by the debtor. Without getting into whether the competent attorney standard should apply or whether Allen decided it or didn't decide it, if we were to find that these communications were not misleading or deceptive, even to the least sophisticated debtor, we don't even have to go there, do we? That's correct, Your Honor. You do not have to go there if you feel that these communications were not otherwise misleading or deceptive. Let me ask you this. Could a document purporting to be a subpoena contain such egregious errors that it violates 1692E? I don't think so, Your Honor. I would submit that it cannot hypothetically. This one, Your Honor, I would say doesn't even rise to that level. But there is no authority that I've found that holds across the board that a violation of a procedural rule is a per se violation of the FDCPA. I haven't found those cases. What I've found are a number of cases that we cited that say that. . . As a matter of fact, I think our case law says exactly. . . The opposite. The opposite. Exactly. You have to have a violation of the FDCPA. The flaw in the paper, the communication, the legal paper, pleading process, whatever you want to call it, the flaw has to relate directly to the FDCPA and result in a violation of the FDCPA. These subpoenas don't rise to that level. They had mistakes. They had omissions. They might not have been able to have been enforced had my law firm tried to enforce them. The omission of the Rule 45 C and D language did not mandate alone, did not mandate quashing the subpoenas. I've cited authority for that proposition. If the omission of that language didn't cause harm to anyone, then it doesn't mandate quashing the subpoena. In this case, the omission of that language did not cause harm to anyone. Can I ask you something? I mean, it's a practical matter. I'm just scratching my head a little bit. If they pointed out what the defects were in the subpoena, why didn't you just reissue a new subpoena without defects? The record doesn't reflect that, and I was not at the firm at the time of this topic, so I don't have an answer to that question. If you don't know, you don't know. I don't know the answer, and it's not in the record. But they could have done that. Clearly, they could have done that. They could have fixed it. In other words, they could have actually, as the Court has already indicated, the law firm had the absolute right to seek 2004 discovery of these debtors to find out if these credit card debts had been incurred fraudulently. Absolutely. What about Mr. Winchell's argument that although the CAN's professional responsibility requires you to communicate with an attorney when you know a party is represented, unless it's otherwise authorized by law at the Fair Debt Collection Act, therefore authorize it by law? What about that position? That, I think, is a problem for Mr. Winchell, Your Honor. There's certainly a Rule 45 subpoena would have to be served personally on the target to be enforced in court. Frequently in my practice, you try to let the other counsel know that you want to subpoena their client so you can work it out. You can talk about dates. You can talk about scope. If they refuse to accept service on behalf of their client, well, then you have to serve it personally. But the issue is not whether there's a conflict between the ethical rules and Rule 45. The issue is whether there's a conflict between Rule 45 and 1692. The provision of 1692, which I don't have in front of me, I mean, I have it in front of me. I don't know off the top of my head which one it is. But the one that says that you cannot communicate with a creditor. A creditor may not communicate, a debt collector may not communicate with a debtor when it knows that the debtor is represented by counsel. That's not 1692CA2. Yes. So the law actually says the opposite of what Mr. Winchell said it says. Well, Mr. Winchell wasn't talking about 1692CA2. He was talking about a conflict between the ethical rules and Rule 45. There is a clear and direct conflict between 1692CA2 and Rule 45. And I would also point out that, you know, I've been a bankruptcy lawyer for 110 years now, I feel. I would never under any circumstances send a subpoena directly to a debtor in bankruptcy. Well, you've weathered it well over those 100 years. Thank you, Your Honor. I wouldn't do that. I would be concerned about the automatic stay. Even though in order to actually effectuate the subpoena powers, I would probably have to put it in his hot little hand. I still wouldn't do it that way because I wouldn't want somebody to. It's common courtesy, isn't it? It's common courtesy. It's common courtesy. It's, you know, it's one of the first lessons that the late Honorable Judge Lifflin taught me when I started practicing bankruptcy law in the Southern District of New York 110 years ago was that you don't take things to court right away. You try to work it out with your client. You try to avoid creating problems for the court. You try to avoid making work for the court. You try to work it out. So obviously you would send, you would communicate first with the person you thought would be the debtor's lawyer. The fact that he wasn't hired necessarily for this realm of activity, in my opinion, doesn't prevent you from taking that first step because the debtor might then opt to hire him as they did. The fact that he might not have been hired to do this work also, I think, is completely irrelevant to the question of whether you apply a competent attorney standard. Whether or not he was hired is a subjective fact. It's not relevant to the objective standards that should be imposed to communications with debtors. Would a competent attorney recognize those errors on the face of the subpoena? Yes, Your Honor. In fact, that happened in this case. Mr. Winchell is a competent attorney, and he recognized that there were problems with the ability to enforce the subpoena as it arrived on his desk. Several problems, as he's pointed out. Several clearing problems, as he's pointed out. But I would submit to you, Your Honor, that the errors and the omissions in the subpoenas do not make them, as he repeatedly says, unlawful. They were perhaps not enforceable, but they were not unlawful. As the Court has already indicated, it was lawful to seek a 2004 exam with the debtors under these circumstances. Okay. If the Court has no... Do you have anything else? I have nothing else unless Your Honor has further questions. No further questions. Ms. Lavery, you're here for some reason, which maybe I unnecessarily deprived you of the opportunity to say something you wanted to say. Come on up here. I just wasn't sure when I saw these minutes... Yes, Your Honor. ...why you were here. I tried to call. I'm pleased to have you here, but do you want to tell us why you're here? I tried to clarify it myself a while ago, Your Honor, to make sure that the last issue identified in Plaintiff's paper about the motions for summary judgment being granted without the benefit of discovery did not impact FIA card services, but I wasn't able to obtain an answer, so... Well, you look at the brief, and you can pretty much tell there's no specific mention of you. It was my impression that they waived any argument about that, whether or not you were a debt collector before us. And that's the way I think we all perceive that. Thank you. And that's the reason why we didn't want to have to drag you up here. No problem. And since you came voluntarily, we're glad to have you. Thank you very much. Okay. Mr. Winchell? Your Honor, I want to direct the Court's attention to one of the issues that was in this case. It is E13. It's the false representation or implication that documents are legal process. That violates the FDCPA. It's that an invalid, in this case, an invalid subpoena can violate the FDCPA. And I'll say, in my case, although I recognized that this subpoena was unlawful, that was not an instant recognition. After what was then 14 years of practice, I did not know off the top of my head that this was unlawful. Is it really unlawful, though, counsel? I mean, it may be procedurally, not cover, dot all the I's and cross all the T's, but is it unlawful? Isn't there a difference? A difference? Well, in this case, the subpoena ultimately – It's maybe unenforceable, but is it unlawful? Maybe. I'll say it two different ways. First, an unenforceable subpoena to a consumer debtor that appears to be enforceable to a least sophisticated debtor is unlawful because it violates the FDCPA. If the least sophisticated debtor cannot tell that the document is unenforceable, that is misleading to the least sophisticated debtor. I could see you making that argument. If this subpoena was sent to the Simons, they were served on the Simons, and for whatever reason, they never thought to contact their Chapter 7 bankruptcy counsel, and they hopped in their car and drove to New York, which some people don't think is such a big hurdle, but others may. They drove to New York for purposes of complying with the subpoena, but that's not the case here. Your Honor, again, I'm going to point out something. A Chapter 7 debtor's attorney is under no particular obligation to do anything with respect to a 2004 exam. It's approved by our local rules. It's approved by all of us. Even if that's so, that's not the case here because you did. I did because… You did. You examined it. You concluded there were flaws in it. You notified your clients who confirmed to you they hadn't gotten it. The facts of this case are different than what you're trying to put before the Court. And one of the reasons we brought this case is that this was systemic, that this was hitting a lot of debtors. And in particular, let me say one thing. I only see Simons here as parties. I don't see a lot of debtors. Is there anything in the record about that, about this being systemic? Yes. I put a pattern of practice in the complaint. We didn't do discovery, so we didn't get to the point of the fact that this was many. And Mr. Ginnett spoke about it, that he had done many, many of these, and that's one of the reasons we brought the case. My particular, the most particularly troubling part of this was the implication and the statement, the certification that it had been sent to my clients, and that was a false certification. And as far as I could tell from the way Mr. Ginnett described it, it was intentional. And to me, I trust lawyers when they tell me something. When I see something on paper that says that it was sent somewhere, I expect that they were honest about it. In this case, they were not. And with all of the other defects of the subpoena, to me, those would be curable. However, it seems to me that nobody should ever certify on a document that something is just absolutely false. That something absolutely false is true, and that's what happened here. Okay. All right, Mr. Winchell. Thank you very much. We thank you, and we thank all counsel for their work on the case, and we'll take the matter on their time.